UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __22-mj-02280-McAliley__

UNITED STATES OF AMERICA
v.

DANIEL PINTADO CAZOLA,

    **Defednant.**

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   Yes   X   No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes   X   No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   Yes   X   No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _/s/ Aimee C. Jimenez_____
AIMEE C. JIMENEZ
Assistant United States Attorney
Southern District of Florida
Court ID No. A5500795
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9028
E-mail: Aimee.Jimenez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>DANIEL PINTADO CAZOLA,<br><br>Defendant. | )<br>)<br>)  Case No. 22-mj-02280-McAliley<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 2021 to February 22, 2022__ in the counties of __Miami-Dade and Lee__ in the __Southern and Middle__ Districts of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 1349<br>18 U.S.C. Sec. 1347 | Conspiracy to Commit Health Care Fraud;<br>Health Care Fraud. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Carlos Baixauli, Jr., HHS-OIG
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time.__

Date: __February 22, 2022__

Judge's signature

City and state: __Miami, Florida__   Hon. Chris M. McAliley, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Carlos Baixauli, Jr., being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the U.S. Department of Health, Office of Inspector General (HHS-OIG), currently assigned to the Miami Regional Office.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

2.     I have been a Special Agent with HHS-OIG since 2019.  Prior to that, I worked with the Coral Gables Police Department for eight years and I also worked in several financial intelligence units at several major banking institutions for five years.  While employed with HHS-OIG, I have participated in numerous health care fraud, wire fraud, and money laundering investigations.

3.     This Affidavit is submitted for the limited purpose of establishing probable cause that DANIEL PINTADO CAZOLA ("PINTADO"), in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in violation of Title 18, United States Code, Section 1347, and that he is conspiring with others to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

4. The facts contained in this Affidavit are based on my personal knowledge and observations, as well as facts relayed to me by other law enforcement officers, witnesses, and documents. This Affidavit does not contain all the facts of this investigation known to me or to other law enforcement personnel. Rather, it sets forth only those facts sufficient to establish probable cause in support of a criminal complaint charging PINTADO with conspiracy to commit health care fraud and substantive health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

## THE MEDICARE PROGRAM

5. The Medicare Program ("Medicare") is a federal health care program that provides free or below-cost health care benefits to individuals who are sixty-five years of age or older or disabled. The benefits available under Medicare are governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversees and administers Medicare. Individuals who receive benefits under Medicare are commonly referred to as Medicare "beneficiaries."

6. Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

7. Medicare is subdivided into multiple program "parts." Medicare Part A covers health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covers physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

8. DME is equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers,

2

and oxygen concentrators.

9. To receive payment from Medicare, DME companies are required to submit a health insurance claim form, known as a CMS-1500. The CMS-1500 requires DME companies to provide certain important information, including: (a) the Medicare beneficiary's name and unique Medicare identification number; (b) the unique physician identification number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided to or supplied to the beneficiary. Once claims are submitted, Medicare generally pays a substantial portion of the cost of the DME, and makes those payments directly to the DME company rather than to the patient/beneficiary.

10. A claim for DME submitted to Medicare qualifies for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed physician.

## THE DEFENDANT AND RELATED ENTITIES

11. Myers Professional Services, Inc. ("Myers Professional Services") is a Florida corporation located at 11595 Kelly Rd, Suite 210, Fort Myers, Florida, that purportedly provides DME to Medicare beneficiaries.

12. DANIEL PINTADO CAZOLA, a resident of Miami-Dade County, is the beneficial owner of Myers Professional Services.

## PROBABLE CAUSE

13. On or about May 20, 2021, a confidential source ("CS") had a recorded meeting with PINTADO in Miami-Dade County, Florida. During the meeting, PINTADO advised the CS that he

had recently purchased a DME that was set up and ready, near the airport (referring to Miami-Dade County). PINTADO explained that he buys the "patients" from someone he knows for $100 per patient. PINTADO said that he buys $5,000 worth of "patients" and that this investment generates approximately $100,000 per week. According to PINTADO, the patient list is provided to a "biller" who bills (Medicare) non-stop, every day, including Saturdays. PINTADO further explained that "clinics" are a big hit and that they yield easily $1 million to $1.5 million per clinic. Based on PINTADO's statements during this conversation, as well as your affiant's training and experience, PINTADO was describing a scheme to submit fraudulent claims to Medicare using lists of Medicare beneficiaries that PINTADO buys from someone he knows, and that the fraudulent claims are for DME that are not actually prescribed by physicians or supplied to Medicare beneficiaries.

14. During the same recorded meeting between PINTADO and the CS, PINTADO offered the CS to invest in a new clinic with him now, or to wait for the following month. PINTADO explained that the investment would cost the CS between $50,000 and $75,000, and that the CS would need to find someone to be the "face" to open the clinic. PINTADO advised that this could be completed in two weeks' time, and that after 50 days, the change of ownership would be completed. PINTADO also explained that after taking over the ownership of the clinic, the CS could bill and be paid every week until the clinic is shut down. PINTADO asked the CS to think about it and encouraged the CS to take up his offer, saying it was a good return and that it was easy.

15. On or about October 13, 2021, PINTADO met with the CS. This meeting was not recorded, but the CS reported the meeting to your affiant on the same day. The CS advised that the CS had seen a check belonging to PINTADO that was in the name of "Myers Professional Services, Inc." The CS stated that during the meeting with PINTADO, PINTADO had explained that this company was the next one they were building in Ft. Myers, Florida, and that he (PINTADO) was

4

going to go to Ft. Myers the following morning with the lady who was doing the billing for him. PINTADO further explained that he was about to mail the paperwork for the clinic, and that they should be ready to start billing in about two to three weeks. Based on the conversation that the CS reported, as well as your affiant's training and experience, PINTADO was explaining that once he sends the Medicare enrollment paperwork reflecting the change of ownership of the DME, he would be able to begin submitting fraudulent claims to Medicare based on the scheme he described during the earlier meeting with the CS.

16. Based on the information provided by the CS, on or about October 14, 2021, agents with HHS-OIG conducted surveillance at the residence of PINTADO in North Miami, Florida. A black SUV, Chevrolet Tahoe, which is not registered to PINTADO, was parked in the driveway of the residence. At approximately 7:55 a.m., agents observed PINTADO enter the Tahoe, and drive away. Agents followed PINTADO to Hialeah, Florida, where they observed PINTADO pick up a white, blond female who rode in the passenger side of the Tahoe. Agents followed the Tahoe until it entered I-75, which indicated to the agents that PINTADO was on his way to Ft. Myers, Florida.

17. On or about 9:00 a.m., October 14, 2021, agents located in Ft. Myers began to conduct surveillance at the office park where Myers Professional Services is located, 11595 Kelly Rd, Ft. Myers. The office park consists of three, one-story buildings, all sharing the address 11595 Kelly Rd. Myers Professional Services is located at Suite 210 of the middle building. At approximately 11:45 a.m., the Tahoe being driven by PINTADO parked in the parking lot for the office building. Agents observed PINTADO and the unidentified blond female walk inside of the middle building where Myers Professional Services is located. At approximately 12:26 p.m., PINTADO and the blond female departed the building, entered the Tahoe and drove away.

18.  According to the State of Florida, Division of Corporations ("Sunbiz"), Myers Professional Services was incorporated on March 23, 2021. On or about April 28, 2021, Jose Antonio Fonseca Gutierrez ("Fonseca Gutierrez") became its listed owner. The Medicare claims data indicates that Myers Professional Services is a DME provider with Medicare that began to submit claims with a date of service of July 5, 2021. Through February 11, 2022, Myers Professional Services has billed the Medicare program approximately $1,889,890 and has been paid by Medicare approximately $1,302,556.71.

19.  Your affiant contacted three of the doctors who are listed in the Medicare claims data for Myers Professional Services, as having prescribed DME to several Medicare beneficiaries. All three doctors and/or the doctors' staff responsible for maintaining patient records stated that none of the listed Medicare beneficiaries were their patients or were patients for whom they had prescribed DME.

20.  A BB&T (now Truist) bank account for Myers Professional Services was opened on May 6, 2020, with a listed address of 11595 Kelly Rd, Ft. Myers, Florida. Fonseca Gutierrez is listed as the sole signatory on the bank account. The bank records indicate that Medicare checks began to be deposited into the Myers Professional Services account in December 2021 and that checks have been deposited in Miami-Dade branches of Truist, as well as at branches located in the Ft. Myers area. The available bank surveillance photos show a male with PINTADO's appearance as the person who deposited the Medicare checks for Myers Professional Services. The bank records reflect that Myers Professional Services has issued checks to a company that is not a DME supplier and that does not appear to be in the health care industry.

21.  Border crossing records indicate that Fonseca Gutierrez, who is a Cuban citizen, traveled from Miami, Florida to Havana, Cuba on or about December 9, 2021. As of the date of this

6

Complaint Affidavit, Fonseca Gutierrez has not returned to the United States through any port of entry. Based on your affiant's experience investigating health care fraud cases and debriefing cooperating defendants involved in health care related fraud and money laundering schemes, I am aware that nominee owners involved in health care fraud schemes sometimes are paid a lump sum by those directing the scheme as compensation for agreeing to return to Cuba, not only to avoid arrest by law enforcement, but to prevent the possibility that the nominee owner will turn over evidence regarding the true owners of the fraud proceeds.

22. Based on the information described above, as well as your affiant's training and experience, I believe that Fonseca Gutierrez is a nominee owner of Myers Professional Services, that PINTADO is the true owner of Myers Professional Services, and that PINTADO and his accomplices are executing a scheme to defraud Medicare through the submission of false claims for reimbursement based on DME that Myers Professional Services is not actually supplying to Medicare beneficiaries, in violation of Title 18, United States Code, Sections 1347 and 1349.

## CONCLUSION

23. Based on the foregoing, I respectfully submit that there is probable cause to believe that DANIEL PINTADO CAZOLA has conspired to commit health care fraud, and has committed

[remainder of page left blank intentionally]

health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Carlos Baixauli, Jr.
Special Agent
U.S. Department of Health,
Office of Inspector General

Attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime this 22nd day of February, 2022.

HONORABLE CHRIS M. McALILEY
UNITED STATES MAGISTRATE JUDGE